Estado Libre Asociado de Puerto Rico
**TRIBUNAL DE APELACIONES**
**PANEL ESPECIAL**

| | | |
|---|---|---|
| Hon. Ismael Rodríguez Ramos, Alcalde y en representación del Municipio de Guánica<br><br>Apelante<br><br>vs.<br><br>Hon. María de los Ángeles Ortiz Rodríguez en representación de la Legislatura Municipal de Guánica<br><br>Apelados | KLAN202300807 | **APELACIÓN** procedente del Tribunal de Primera Instancia, Sala Superior de Ponce<br><br>Civil Núm.: PO2023CV00611 (603)<br><br><br>Sobre: *Mandamus* |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Rodríguez Casillas[1].

Rivera Colón, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 16 de noviembre de 2023.

Comparece ante nos, el Hon. Ismael Rodríguez Ramos (en adelante, Hon. Rodríguez Ramos, alcalde o apelante), quien presenta recurso de apelación en el que solicita la revocación de la "Sentencia" emitida el 20 de julio de 2023,[2] por el Tribunal de Primera Instancia, Sala Superior de Ponce. Mediante dicho dictamen, el foro primario declaró No Ha Lugar el recurso de *mandamus* presentado por el apelante.

Examinada la solicitud de autos, la totalidad del expediente y el estado de derecho aplicable ante nuestra consideración, confirmamos el dictamen mediante los fundamentos que expondremos a continuación.

---

[1] Véase Orden Administrativa Núm. OATA-2023-164, donde se designa al Hon. Roberto Rodríguez Casillas, debido a la inhibición del Hon. Joel A. Cruz Hiraldo, para entender y votar en el recurso de epígrafe.

[2] Notificada ese mismo día.

Número Identificador

SEN2023 _____

**I.**

El 2 de agosto de 2022, el Hon. Rodríguez Ramos, alcalde del Municipio de Guánica, radicó ante la Legislatura Municipal dos proyectos. En el primero, solicitó la confirmación y ratificación del nombramiento del señor Omar Pacheco Vélez (Sr. Pacheco Vélez) como Administrador Municipal. En el segundo, solicitó la confirmación y ratificación del nombramiento de la señora Jackeline García Negrón (Sra. García Negrón) como Coordinadora Administrativa de Servicios de Salud en el Centro Juan M. Santiago. Por tratarse de puestos de confianza, estos puestos debían ser sometidos ante el consentimiento y aprobación de la Legislatura Municipal.

Habiéndose entregado la documentación requerida en el procedimiento de reclutamiento y selección, el 4 de agosto de 2022, el Director de Recursos Humanos del Municipio de Guánica certificó que ambos proponentes cumplían con la preparación y experiencia mínima para desempeñarse en sus respectivos puestos.

Así las cosas, el 31 de agosto de 2022, la Legislatura Municipal informó al Hon. Rodríguez Ramos que ambos proyectos se llevaron a votación en Sesión Ordinaria celebrada el 23 de agosto de 2022, y ninguno de ellos logró los votos necesarios para ser aprobado.

Ante este desenlace, el 6 de septiembre de 2022, el alcalde presentó ante el Tribunal de Primera Instancia un recurso de *mandamus*. En esencia, alegó que: (1) no se ofreció justificación alguna para rechazar los nombramientos, (2) la Legislatura Municipal tiene un deber ministerial de confirmar los nombramientos enviados por el alcalde, siempre y cuando estos cumplan con los requisitos, y (3) ambos nombramientos se

"colgaron" aun cuando las personas sugeridas cumplían con todos los requisitos que la ley les exige.

El 26 de noviembre de 2022, la Legislatura Municipal presentó una "Moción en Solicitud de Desestimación", y solicitó la desestimación del caso, principalmente, por los siguientes fundamentos, a saber: (1) que el Hon. Rodríguez Ramos, previo a la presentación del *mandamus*, nunca requirió a la Legislatura Municipal el cumplimiento con su deber ministerial; y (2) el alcalde dispone de otros remedios legales adecuados para hacer valer su derecho.

Por su parte, el 1 de diciembre de 2022, el Hon. Rodríguez Ramos presentó su "Oposición a Solicitud de Desestimación", y argumentó lo siguiente: (1) que no era necesario una solicitud previa a la Legislatura Municipal requiriendo el cumplimiento con su deber ministerial, toda vez que la controversia es de estricto derecho y de alto interés público; (2) según el Art. 2.004 (c) del Código Municipal, *infra*, la Legislatura Municipal no tiene discreción para "colgar" nombramientos, por lo que se trata de un deber ministerial; y (3) tomando como ciertos los hechos bien alegados en el recurso de *mandamus*, procedería la adjudicación sumaria a su favor.

Evaluados los escritos sometidos por ambas partes, el 29 de diciembre de 2022,[3] el foro primario emitió una "Sentencia",[4] y declaró No Ha Lugar el *mandamus* presentado por el Hon. Rodríguez Ramos. No obstante, ordenó a la Legislatura Municipal a emitir una "Resolución" por escrito estableciendo las razones por las cuales rechazaron los nombramientos de los nominados.

En vista de lo anterior, el 3 de febrero de 2023, la Legislatura Municipal celebró Sesión Ordinaria en la cual se discutió, entre

---

[3] Notificada el 4 de enero de 2023.
[4] Véase, PO2022CV02501.

otros asuntos, lo relativo al cumplimiento con la orden dispuesta en la "Sentencia" emitida el 29 de diciembre de 2022. A esos efectos, los miembros que componen la Legislatura Municipal de Guánica hicieron constar las causas y razones por las cuales votaron a favor, en contra o se abstuvieron. Estas razones se redujeron a escrito en el Acta Núm. 17 Serie 2022-2023.

Gozando con las razones específicas por las cuales los legisladores municipales emitieron su voto, el 2 de marzo de 2023, el Hon. Rodríguez Ramos presentó, por segunda ocasión, un recurso de *mandamus* ante el foro *a quo*. En síntesis, sostuvo que las razones esbozadas por los miembros de la Legislatura Municipal no cumplieron con el Código Municipal, *infra*. Reiteró que, conforme el Art. 2.004 (c) del precitado estatuto, la Legislatura Municipal posee un deber ministerial de confirmar al candidato si éste cumple con los requisitos que establece la ley. Recalcó que, en vista de que los nominados cumplieron con todos los requisitos, la Legislatura Municipal no tenía discreción para "colgar" sus nombramientos.

Oportunamente, la Legislatura Municipal presentó "Moción en Solicitud de Desestimación" y, en lo pertinente, aseveró que: (1) debido a que la Sra. García Negrón fue nominada a ejercer funciones administrativas, ésta queda sujeta a las disposiciones de la Ley Núm. 31 del 30 de mayo de 1975, *infra*; (2) que el antedicho estatuto exige una licencia expedida por la Junta Examinadora para ejercer las funciones a las cuales la Sra. García Negrón fue nominada, y ésta no posee dicha licencia; (3) el incumplimiento con este criterio pone en riesgo los servicios del cargo para el cual fue nominada; (4) el Sr. Pacheco Vélez no obtuvo los votos necesarios para su confirmación; y (5) los miembros de la Legislatura Municipal estaban facultados para abstenerse a votar, pues lo hicieron por razones de trascendencia moral.

El 27 de junio de 2023, el Hon. Rodríguez Ramos presentó una "Oposición a Solicitud de Desestimación", y reiteró sus planteamientos en cuanto a la procedencia del *mandamus*. Adicionalmente, expresó que la Sra. García Negrón no necesita una licencia para ejercer las funciones para las cuales fue nominada, puesto que la administración no recae en su cargo, sino en la compañía New Medical Quality Services, CSP. En cuanto a la abstención de los miembros de la Legislatura Municipal, esgrimió que ésta era improcedente en derecho, ya que tal abstención surge del Reglamento de la Legislatura Municipal, y éste no puede ser contrario a las disposiciones del Código Municipal, *infra*, el cual no provee para abstención alguna en el proceso de confirmación.

Atendidas las posiciones de ambas partes, el 20 de julio de 2023,[5] el Tribunal de Primera Instancia emitió una "Sentencia" mediante la cual declaró No Ha Lugar el recurso de *mandamus* presentado por el alcalde. Razonó que: (1) la Legislatura Municipal cumplió con su deber ministerial de evaluar los nombramientos y confirmarlos, en caso de que estos cumplieran con la ley, (2) los candidatos propuestos por el alcalde no cumplieron con todos los requisitos en ley, ya que no presentaron evidencia de prueba de dopaje, según lo exige el Código Municipal, *infra*, y (3) el alcalde posee otros remedios en ley, ya que puede presentar nuevamente los nombramientos.

Insatisfecho con esta determinación, el 3 de agosto de 2023, el Hon. Rodríguez Ramos presentó "Solicitud de Reconsideración". En resumidas cuentas, esbozó que el requisito de prueba de dopaje no forma parte de los criterios dispuestos en el Art. 2.004 (c) del Código Municipal, *infra*, bajo los cuales un legislador municipal puede "colgar" a un nominado. Insistió en que el deber ministerial de la Legislatura Municipal es el de confirmar los nombramientos

---

[5] Notificada en igual fecha.

hechos por el alcalde, siempre que éstos cumplan con los criterios del Art. 2.004 (c) del Código Municipal, *infra.*

En respuesta, el 14 de agosto de 2023, la Legislatura Municipal presentó "Replica a Reconsideración", y reafirmó la necesidad de que los candidatos cumplan con el criterio de la prueba de dopaje, según lo requiere el Código Municipal, *infra.*

Al día siguiente, entiéndase, el 15 de agosto de 2023,[6] el Tribunal de Primera Instancia emitió "Resolución", y declaró No Ha Lugar la "Solicitud de Reconsideración" presentada por el apelante.

Aún insatisfecho, el Hon. Rodríguez Ramos recurre ante esta segunda instancia judicial, y señala la comisión de los siguientes errores, a saber:

1) *Erró el Honorable Tribunal de Primera Instancia, al no ordenar a la Honorable Legislatura Municipal a cumplir con su deber ministerial de confirmar a los nominados del Ejecutivo Municipal al tener su discreción limitada a los requisitos del código municipal ya que los nominados cumplían con todos los requisitos.*

2) *Erró el Honorable Tribunal de Primera Instancia, al añadir requisitos que no se encuentran en las facultades que tiene la Legislatura Municipal a la hora de confirmar nominados del Primer Ejecutivo Municipal en una modalidad de legislar en violación a la cláusula de separación de poderes que permea en nuestro ordenamiento jurídico.*

3) *Erró el Honorable Tribunal de Primera Instancia, al desestimar la causa de acción de demandante-recurrente obviando todo el andamiaje de* [sic] *debe cumplirse antes de desestimar una causa de acción de un demandante quitándole a su vez su día en corte.*

**II.**

**-A-**

El *mandamus* es un recurso discrecional y altamente privilegiado mediante el cual se le exige a una persona natural o jurídica el cumplimiento de un deber ministerial que esté dentro de las atribuciones o deberes del cargo que ocupa. Art. 649 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3421. Un deber

---

[6] Notificada ese mismo día.

ministerial es aquel impuesto por ley y que la parte demandada tiene que cumplir; es decir, que no admite discreción en el ejercicio de su cumplimiento. *Kilómetro 0 v. Pesquera López et al.*, 207 DPR 200, 214 (2021). Es decir, "la ley no sólo debe autorizar, sino exigir la acción requerida". *AMPR v. Srio. Educación, E.L.A.*, 178 DPR 253, 264 (2010), citando a R. Hernández Colón, <u>Derecho Procesal Civil</u>, 4ta ed., San Juan, LexisNexis, 2007, pág. 477.

Por tanto, si el acto cuya ejecución se solicita depende de la discreción o el juicio del funcionario, el deber no puede considerarse como uno ministerial. *Romero, Valentín v. Cruz, CEE et al.*, 205 DPR 972, 985 (2020). Los deberes discrecionales, por no ser ministeriales, quedan fuera del ámbito del recurso de *mandamus*. *AMPR v. Srio. Educación, E.L.A.*, *supra*, a la pág. 264.

Es importante recalcar que, la determinación de si existe un deber ministerial "es una cuestión sujeta a interpretación judicial que no depende de un juicio *a priori* fundado exclusivamente en la letra del estatuto". *Íd.* Sino que, esta determinación tiene que surgir del examen y análisis "de todos los elementos de juicio disponibles para así descubrir el verdadero significado y propósito de la disposición legal". *Íd.*, a la pág. 265.

No basta con una mera directriz o disposición legal que requiera al funcionario público hacer algo, sin más. *Íd.*, a la pág. 264. Resulta necesaria la existencia de un mandato específico que la parte demandada tiene que cumplir, sin que este último tenga la potestad de decidir si cumple o no el acto solicitado. *Íd.*

Por tratarse de un recurso extraordinario, el *mandamus* solo estará disponible cuando el peticionario demuestre que carece de "un recurso adecuado y eficaz en el curso ordinario de la ley". Art. 651 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3423. A su vez, la parte peticionaria deberá demostrar que hizo un requerimiento previo, y que dicho requerimiento no fue

debidamente atendido por el demandado. *Romero, Valentín v. Cruz, CEE et al.*, *supra*, a la pág. 985.

Por su parte, al momento de considerar si procede o no conceder el *mandamus* solicitado, el tribunal deberá analizar, entre otros factores, los intereses públicos involucrados, y el impacto sobre la Rama Ejecutiva y los derechos de terceros. *Íd.*

Finalmente, debemos enfatizar que, el recurso de *mandamus*, tratándose un recurso extraordinario, solo procede en situaciones excepcionales y deber utilizarse con cautela. *AMPR v. Srio. Educación, E.L.A.*, *supra*, a la págs. 295-296. En atención a ello, y como regla general, nuestra jurisprudencia ha reiterado la necesidad de que el demandado sea interpelado, como requisito para considerar una solicitud de *mandamus*. *Íd.*, a la pág. 296. Esta norma tiene excepciones como, por ejemplo, cuando se trata de un asunto de interés público, o casos que involucran asuntos de naturaleza electoral. *Íd.*

**-B-**

El Código Municipal de Puerto Rico, Ley Núm. 107-2020, 21 LPRA sec. 7001 *et seq.*, según enmendada, provee el marco legal que regula el gobierno municipal, incluyendo su organización, administración y funcionamiento. Art. 1.002 del Código Municipal, 21 LPRA sec. 7002. El precitado estatuto reconoce que las facultades legislativas del municipio serán ejercidas por una Legislatura Municipal. Art. 1.020 del Código Municipal, 21 LPRA sec. 7041. Entre otras cosas, la Legislatura Municipal está facultada para "[c]onfirmar los nombramientos de los funcionarios municipales, de los oficiales municipales y miembros de juntas o entidades municipales cuyos nombramientos estén sujetos a la confirmación de la Legislatura Municipal, por disposición de esta o cualquier otra ley". Art. 1.039 del Código Municipal, 21 LPRA sec. 7065.

En lo que nos concierne, el Art. 2.004 del Código Municipal, 21 LPRA sec. 7152, dispone que, los nombramientos de aquellas personas designadas por el alcalde como directores de unidades administrativas, por considerarse empleados de confianza, "estarán sujetos a la confirmación de la Legislatura Municipal".

Acorde lo anterior, la ley exige que la Legislatura Municipal apruebe o rechace los nombramientos que el alcalde somete ante su consideración. Véase, Art. 2.004 (b) del Código Municipal, *supra.* Para esto, la Legislatura Municipal dispone de un término de 30 días, contado a partir de la fecha de radicación. *Íd.* Si la Legislatura Municipal no actúa dentro de dicho término, o sea, que no apruebe ni rechace el nombramiento, pues se entenderá que el funcionario fue confirmado por el cuerpo legislativo. *Íd.*

Como parte de este proceso de consideración, el Art. 2.004 (c) del Código Municipal, *supra*, provee lo siguiente:

> *En la consideración de los nombramientos de los funcionarios municipales, la facultad de la Legislatura Municipal estará limitada a evaluar:*
>
> *1. Si el candidato propuesto cumple con los requisitos de preparación académica o experiencia, o una combinación de ambas, según se haya establecido para el puesto mediante este Código, el Plan de Clasificación de Puestos y Retribución Uniforme vigente en el municipio, por ordenanza o resolución.*
>
> *2. No haber sido convicto de delito grave o delito menos grave que implique depravación moral.*
>
> *3. No haber sido destituido de cargo o empleo por conducta impropia en el desempeño de sus funciones.*
>
> *4. No haber sido declarado mentalmente incapacitado por un tribunal competente.*

En caso de que la Legislatura Municipal rechace el nombramiento por cualquier causa o razón distinta a las contempladas en el inciso (c) antes citado, el alcalde puede: (1) someter el nombramiento nuevamente, o (2) recurrir al Tribunal de Primera Instancia mediante procedimiento de *mandamus.* Véase, Art. 2.004 (d) del Código Municipal, *supra.*

**-C-**

Es norma reiterada en nuestro acervo jurídico que, "[c]uando la ley es clara y libre de toda ambigüedad, su texto no debe menospreciarse bajo el pretexto de cumplir su espíritu". Art. 19 del Código Civil de 2020, 31 LPRA sec. 5341. En ese sentido, "cuando el legislador se ha expresado en un lenguaje claro e inequívoco, el propio texto de la ley es la expresión por excelencia de la intención legislativa". *Pueblo v. Maldonado De Jesús y otros*, 2023 TSPR 114, 212 DPR ___ (2023), citando a *Cordero et al. v. ARPe et al.*, 187 DPR 445, 456 (2012).

De otra parte, la interpretación de un estatuto debe hacerse íntegramente, tomando en conjunto todas sus disposiciones, y no por secciones separadas. *Martajeva v. Ferre Morris y otros*, 210 DPR 612, 627 (2022). En otras palabras, "deben interpretarse las diferentes secciones, las unas en relación con las otras, completando o supliendo lo que falte o sea oscuro en una con lo dispuesto en la otra, procurando siempre dar cumplimiento al propósito del legislador". *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 40-41 (2018), citando a R.E. Bernier y J.A. Cuevas Segarra, Aprobación e Interpretación de las Leyes en Puerto Rico, 2.a ed. rev., San Juan, Pubs. JTS, 1987, pág. 315. En el cumplimiento de esta función, debemos armonizar, hasta donde sea posible, todas las disposiciones de ley, con el fin de lograr la interpretación más integrada, lógica y razonable de la intención legislativa.

**III.**

Según surge del tracto procesal discutido, el Hon. Rodríguez Ramos nominó al Sr. Pacheco Vélez y a la Sra. García Negrón a ocupar ciertos puestos de confianza, sujeto a la confirmación de la Legislatura Municipal. Ante el hecho de que la Legislatura Municipal "colgó" ambos nombramientos, el alcalde presentó un recurso de *mandamus* y solicitó al tribunal que ordenase la

confirmación de dichos nombramientos. Su contención es que la Legislatura Municipal posee un deber ministerial de confirmar los nominados, siempre y cuando cumplan con los criterios dispuestos en el Art. 2.004 (c) del Código Municipal, *supra.* No obstante, el foro primario determinó que el deber ministerial de la Legislatura Municipal se circunscribe a evaluar a los candidatos propuestos, y en llevar a votación el proceso de confirmación. En otras palabras, concluyó que el deber ministerial de la Legislatura Municipal no es el de confirmar a los nominados, sino evaluarlos y considerarlos.

En su escrito, el apelante señala, como primer error, que el Tribunal de Primera Instancia debió ordenar a la Legislatura Municipal a confirmar a los candidatos, toda vez que estos cumplen con los criterios del Art. 2.004 (c) del Código Municipal, *supra.* No le asiste la razón.

En específico, el Art. 2.004 (c) del Código Municipal, *supra*, dispone lo siguiente:

> *En la consideración de los nombramientos de los funcionarios municipales, la facultad de la Legislatura Municipal estará limitada a evaluar:*
>
> *1. Si el candidato propuesto cumple con los requisitos de preparación académica o experiencia, o una combinación de ambas, según se haya establecido para el puesto mediante este Código, el Plan de Clasificación de Puestos y Retribución Uniforme vigente en el municipio, por ordenanza o resolución.*
>
> *2. No haber sido convicto de delito grave o delito menos grave que implique depravación moral.*
>
> *3. No haber sido destituido de cargo o empleo por conducta impropia en el desempeño de sus funciones.*
>
> *4. No haber sido declarado mentalmente incapacitado por un tribunal competente.*

La posición del Primer Ejecutivo Municipal es que, conforme el precitado artículo, la facultad de la Legislatura Municipal está limitada a evaluar si el funcionario nominado por el alcalde cumple con estos cuatro criterios. Por ende, aduce que la Legislatura Municipal no posee discreción para "colgar" un nombramiento si la

persona nominada cumple con los cuatro requisitos que anteceden.

Del andamiaje estatutario descrito surge que la Legislatura Municipal está facultada en ley para aprobar o rechazar un nombramiento. Art. 2.004 (b) del Código Municipal, *supra*. Por ende, no podemos adoptar la postura del apelante, en cuanto a que la Legislatura Municipal tiene un "deber ministerial" de confirmar un nombramiento si el candidato cumple con los cuatro criterios dispuestos en el Art. 2.004 (c) del Código Municipal, *supra*.

Como la Legislatura Municipal tiene la potestad de decidir si confirma o rechaza el nombramiento, tal acto no puede considerarse ministerial. Más bien, se trata de un acto cuya ejecución depende de la discreción o el juicio del legislador municipal. Recordemos que, los deberes discrecionales, por no ser ministeriales, quedan fuera del ámbito del recurso de *mandamus*. *AMPR v. Srio. Educación, E.L.A., supra*, a la pág. 264.

Más bien, tal y como determinó el foro recurrido en su "Sentencia", el deber ministerial de la Legislatura Municipal recae en considerar y llevar a votación a los nominados. Art. 2.004 (b) del Código Municipal, *supra*. Aquí, la Legislatura Municipal consideró los nombramientos del Sr. Pacheco Vélez y de la Sra. García Negrón. Además, dichos candidatos fueron a votación mediante Sesión Ordinaria celebrada el 23 de agosto de 2022. Dentro de la discreción que posee, la Legislatura Municipal optó por rechazar los nombramientos. Somos del criterio que, al así actuar, la Legislatura Municipal cumplió con el deber ministerial que el Código Municipal le impone.

A su vez, en su segundo señalamiento de error, el Hon. Rodríguez Ramos sostiene que el aludido inciso (c) "contempla expresamente las instancias en las que los legisladores pueden

"colgar" un nominado",[7] por lo que no pueden considerarse "requisitos, criterios y obligaciones que no fueron contemplados por el Legislador".[8]

Lo anterior, pues, tanto la Legislatura Municipal, así como el Tribunal de Primera Instancia, al momento de emitir sus respectivas determinaciones, tomaron en consideración el hecho de que se omitió la presentación de la prueba de dopaje de ambos candidatos, según lo exige el Art. 2.069 del Código Municipal, 21 LPRA sec. 7263, el cual establece que:

> *Como parte de una evaluación médica diseñada para determinar la salud general **de los candidatos a empleo**, todo municipio requerirá la presentación de un informe certificado de resultado de una prueba para la detección de sustancias controladas **como requisito previo al empleo**. Dicha prueba podrá ser administrada por cualquier laboratorio, no más tarde de veinticuatro (24) horas desde que el municipio se lo requiera al candidato en cuestión, la cual será costeada por el municipio que la solicitó. La negativa de cualquier candidato a empleo a someterse a dicha prueba, o un resultado positivo en la misma, así certificado por el laboratorio en cuestión, **será causa suficiente para denegar el empleo**. Cada municipio establecerá la reglamentación necesaria para la implementación de esta disposición.* (Énfasis provisto).

De igual forma, la Legislatura Municipal consideró el hecho de que la Sra. García Negrón fue nominada como Coordinadora Administrativa de Servicios de Salud, puesto que, según surge de las declaraciones hechas por los miembros que componen la Legislatura Municipal de Guánica,[9] conlleva la tarea de administrar servicios de salud, aun cuando la candidata no posee la licencia para ello, según lo requiere el Art. 12 de la Ley Núm. 31 del 30 de mayo de 1975, 20 LPRA sec. 2351, según enmendada.[10]

En apoyo a sus contenciones, el apelante enfatiza que la prueba de dopaje ni la falta de licencia debieron considerarse por

---

[7] Véase, apéndice pág. 13.

[8] *Íd.*

[9] Véase, apéndice págs. 74-81.

[10] Literalmente, este artículo establece que "[N]inguna persona podrá ejercer la profesión de Administrador de Servicios de Salud, a menos que posea una licencia de acuerdo con los términos de esta ley".

la Legislatura Municipal ni por el foro recurrido, puesto "que fue una manera de añdir [sic] requisitos que no surgen de la Ley".[11] Como puede apreciarse, el apelante nos invita a adoptar una postura que, en la práctica, obligaría a la Legislatura Municipal a confirmar aquellos candidatos que cumplen a cabalidad con los cuatro criterios dispuestos en el Art. 2.004 (c) del Código Municipal, *supra*, aun cuando estos puedan incumplir con toda una infinidad de otros requisitos legales necesarios para ocupar el puesto.

Cónsono con el marzo legal expuesto, la interpretación de un estatuto debe hacerse íntegramente, o sea, no por secciones separadas, sino tomando en conjunto todas sus disposiciones e interpretándolas las unas con las otras, procurando siempre dar cumplimiento al propósito del legislador. Haciendo este ejercicio con las disposiciones legales antes citadas, nuestra interpretación más integrada de la intención legislativa es que, en su facultad de confirmación, la Legislatura Municipal procure, no tan solo por el cumplimiento de los criterios contenidos en el Art. 2.004 (c) del Código Municipal, *supra*, sino también de aquellos otros que el puesto requiera como, por ejemplo, la prueba de dopaje que exige el Art. 2.069 del Código Municipal, *supra*.

Estamos claros que la intención legislativa fue concederle a la Legislatura Municipal la facultad de "[c]onfirmar los nombramientos de los funcionarios municipales". Art. 1.039 del Código Municipal, *supra*. Tampoco está en entredicho la facultad de la Legislatura Municipal para, dentro de su discreción, confirmar o rechazar un nombramiento. Véase, Arts. 2.004 (b) y (d) del Código Municipal, *supra*. Asimismo, el lenguaje del Art. 2.069 del Código Municipal, *supra*, es patente, y no admite excepciones en cuanto a la presentación de la prueba de dopaje.

---

[11] *Íd.* pág. 14.

El Art. 2.069 del Código Municipal, *supra*, es claro en cuanto a que todo municipio tiene que requerir la prueba para la detección de sustancias controladas como requisito previo al empleo. Si el candidato se negare a presentar la prueba, tal acto será causa suficiente para denegarle el empleo solicitado. *Íd.* Por su parte, el Art. 12 de la Ley Núm. 31 del 30 de mayo de 1975, *supra*, dispone que, para ejercer la profesión de Administrador de Servicios de Salud, será necesario poseer una licencia. De las disposiciones que anteceden surge una intención legislativa clara: la prueba de dopaje es un requisito previo al empleo, y para ejercer la profesión de administrador de servicios de salud es necesario poseer la licencia requerida para ello.

Por el contrario, el Art. 2.004 (d) del Código Municipal, *supra*, no expresa, de forma clara, que la Legislatura Municipal **únicamente** podrá rechazar el nombramiento de un funcionario si este incumple con alguno de los requisitos incluidos en el Art. 2.004 (c) del Código Municipal, *supra*. Si fuera así, no sería necesario recurrir al ejercicio de hermenéutica legal que hoy realizamos.

Notamos que, aunque el Art. 2.004 (c) del Código Municipal, *supra*, menciona que "la facultad de la Legislatura Municipal estará limitada a evaluar" los cuatro criterios que allí se mencionan, no es menos cierto que, el Art. 2.004 (d) del Código Municipal, *supra*, reconoce, **de forma expresa**, la posibilidad de que la Legislatura Municipal pueda rechazar el nombramiento de cualquier funcionario "por cualquier causa o razón distinta a las contempladas en el inciso (c) de este Artículo".

Ante esta posibilidad, la Legislatura Municipal tampoco estaría impedida de considerar la ausencia de prueba de dopaje y la falta de licencia para rechazar los candidatos propuestos por el alcalde. Aunque estas son causas o razones distintas a las

contempladas en el inciso (c), la ley no se lo impide. A *contrario sensu*, el Art. 2.004 (d) del Código Municipal, *supra*, lo viabiliza.

Dentro del ejercicio de interpretación que el tribunal debe realizar con toda ley, concluimos que la verdadera intención legislativa es la de exigir el cumplimiento de los criterios contenidos, no tan solo en el Art. 2.004 (c) del Código Municipal, *supra*, sino también de aquellos incluidos en otras secciones del Código Municipal que sean requisito previo al empleo como, por ejemplo, la prueba de dopaje del Art. 2.069 del Código Municipal, *supra*.

El Art. 2.004 (c) del Código Municipal, *supra*, provee los requisitos mínimos con los cuales el candidato debe cumplir para ser confirmado.[12] Por tanto, en primera instancia, la Legislatura Municipal debe asegurarse que el candidato cumple con estos criterios. Luego, la Legislatura Municipal debe cerciorarse de que el candidato cumple con cualquier otro criterio necesario para ejercer el puesto al cual fue nominado. Después de esto, la Legislatura Municipal puede, dentro de su facultad discrecional, decidir si confirma o rechaza su nombramiento. Precisamente, esta es la situación que hoy atendemos en donde, aun cuando los candidatos cumplieron con los requisitos del Art. 2.004 (c) del Código Municipal, *supra*, estos incumplieron con otros criterios necesarios para ejercer sus puestos y la Legislatura Municipal, dentro de su discreción, rechazó sus nombramientos.

Esta interpretación no tan solo es la más lógica de acuerdo con la intención legislativa, sino que también es la más razonable. Lo contrario sería otorgarle al Art. 2.004 (c) del Código Municipal, *supra*, un alcance supremo que le permita desplazar las demás disposiciones del Código Municipal, e incluso de otras leyes

---

[12] Recordemos que, en este caso, el Director de Recursos Humanos del Municipio de Guánica certificó que ambos proponentes cumplían con la preparación y experiencia **mínima** para desempeñarse en sus respectivos puestos.

especiales. En definitiva, este no tiene el efecto que el alcalde pretende adjudicarle.

En cuanto al último señalamiento de error, basta con mencionar que el recurso de *mandamus* es uno extraordinario y discrecional que debe utilizarse con cautela. Aunque el propio Art. 2.004 (d) del Código Municipal, *supra*, faculta al alcalde a presentar un *mandamus* cuando la Legislatura Municipal rechaza un nombramiento por cualquier causa o razón distinta al Art. 2.004 (c) del Código Municipal, *supra*, lo cierto es que, ello no desvirtúa a naturaleza discrecional del auto. Según ha resuelto nuestro Alto Foro, "las decisiones discrecionales que toma el Tribunal de Primera Instancia no serán revocadas a menos que se demuestre que ese foro abusó de su discreción". *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434 (2013). Por entender que el foro *a quo* actuó dentro del marco de razonabilidad y no abusó de su discreción al declarar No Ha Lugar el recurso presentado por el apelante, determinamos que el último señalamiento de error tampoco fue cometido.

**IV.**

Por los fundamentos que anteceden, los que hacemos formar parte de este dictamen, confirmamos la "Sentencia" apelada, emitida por el Tribunal de Primera Instancia, Sala de Ponce.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones